# in THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **MIDWEST DISCOUNT BROKERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 01-3041-CV-S-RED |
| | ) | |
| **TEXAS TITAN RESOURCES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Now before the Court is Plaintiff Andrew Garrett, Inc.'s Motion for Summary Judgment (Doc. 44) against Defendant Harris Dempsy "Butch" Ballow. Plaintiff seeks summary judgment against Defendant Ballow individually, after securing a prior arbitration judgment against Defendant Texas Titan Resources, on the grounds that Defendant Ballow breached a contract with Plaintiff, engaged in fraudulent misrepresentation, and is liable for Texas Titan's judgment as the alter ego of Texas Titan. This case had been stayed pending the arbitration between Plaintiff and other Defendants, and during the course of this case, Defendant Ballow had been indicted in federal court in Texas, agreed to cooperate with prosecutors, but then absconded prior to his sentencing hearing on December 16, 2004. Plaintiff thereafter filed discovery requests and served them upon Defendant Ballow's last known address and received no responses to the requests. Plaintiff then filed the Motion now pending. Documents related to the Motion were served upon Defendant Ballow's last known address and also forwarded to a forwarding address. Defendant Ballow did not respond to the Motion, and time for response has passed. Taking the facts set forth by Plaintiff as true, but viewing any factual inferences in a light most favorable to Defendant, and for the reasons below,

the Court **GRANTS** Plaintiff's Motion.

## I. Factual Background[1]

Plaintiff is a Missouri corporation with its principal place of business located in Springfield, Missouri.[2] Defendant Harris Dempsey "Butch" Ballow was, at the time of the formation of the relevant contracts, an individual resident of the State of Texas. Defendant Texas Titan[3] was a Texas corporation with its principal place of business in League City, Texas. In August 1998, Texas Titan forfeited its corporate status for failure to pay franchise taxes. Defendant Ballow owned and operated Texas Titan, but also directed actions taken by Texas Titan and its employees and controlled Texas Titan's financial affairs. Defendant Ballow also controlled numerous other corporations; A Texas state district court judge found that the other corporations were defunct, inadequately capitalized, shams used to perpetrate fraud on creditors and purchasers and were the alter egos of Defendant Ballow. The same judge also noted that Defendant Ballow mingled corporate funds with his own funds and with funds of family members and friends without proper accounting and were used to avoid Defendant Ballow's personal liabilities. Plaintiff served a request for admission on Defendant Ballow asserting the same, and Defendant Ballow's refusal to answer the request deems it admitted by Ballow.

---

[1] In its Memorandum in Support of the Motion, Plaintiff provided a statement of uncontroverted material facts in separately numbered paragraphs, as required by Local Rule 56.1. Because Defendant did not respond to the Motion, he did not specifically controvert any facts listed in Plaintiff's statement. Therefore, those facts shall be deemed admitted for the purpose of summary judgment. Local Rule 56.1(a).

[2] Plaintiff is now known as Andrew Garrett, Inc.

[3] Texas Titan was dismissed from this case pursuant to an Order of this Court on January 25, 2005, upon Plaintiff's statement that it would attempt to enforce the arbitration award against Texas Titan in federal court in Texas.

2

Ballow used the shell corporations, including Texas Titan, to make material misrepresentations about investment experience, net worth, and annual income of the account holder and its officers. Ballow also used the corporations to improperly sell and manipulate stocks, including one stock, Evans Systems, Inc. Ballow executed wash sales[4] and matched orders[5] to manipulate the market for Evans Systems, Inc. stock. These actions were adjudged to be in violation of sections 18(a) of the Securities Act of 1933, 10(b) of the Securities Exchange Act of 1934, and of Rule 10b-5 by a federal judge in the Southern District of Texas.

In June 1998, Texas Titan, upon Defendant Ballow's direction, opened an investment account with Plaintiff. Texas Titan executed both a Cash Account Agreement and a Margin and Short Account Agreement. The Agreements provided Texas Titan with a line of credit, but that the securities in Texas Titan's account could be liquidated if the margin did not meet requirements or otherwise in Plaintiff's discretion. The agreements stated that Texas Titan would be liable for any deficiencies and for any costs and fees incurred by Plaintiff in collecting any such amounts. Defendant Ballow was aware of the agreements.

Texas Titan represented to Plaintiff that it enjoyed an annual income of $1,000,000 and a net

---

[4] "A sale of securities made at about the same time as a purchase of the same securities (such as within 30 days), resulting in no change in beneficial ownership. ... [S]ecurities laws prohibit a wash sale made to create the false appearance of market activity." *Black's Law Dictionary* at 1366 (8th ed. 2004).

[5] "'[O]rders for the purchase/sale of a security that are entered with the knowledge that orders of substantially the same size, at substantially the same time and price, have been or will be entered by the same or different persons for the sale/purchase of such security.'" *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 340 (S.D.N.Y. 1999) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 205 n.25 (1976)).

3

worth of $2,000,000, including a "liquid net worth" of $1,000,000 and that it had 10 years of investing experience. However, Ballow instructed Diane Johnson, Ballow's personal assistant, to represent such figures, even though they were false. Ms. Johnson testified that Texas Titan did not produce any products nor have any tangible assets. To other brokerages, Texas Titan, at the instruction of Ballow, represented that it had an annual income of no more than $300,000 and liquid assets of no more than $300,000. As Ballow was in control of the company, he knew that such representations were false and would be relied upon by Plaintiff. Such representations were relied on by Plaintiff in deciding to open an account and provide credit. Plaintiff states that if Texas Titan had completed the Agreements truthfully, it would not have extended credit to Texas Titan.

After Texas Titan opened the account with Plaintiff, Texas Titan transferred 40,000 shares of Evans Systems, Inc. and began to actively trade the security. Soon after, Texas Titan also began heavy and active trading in Industrial Data Systems and Applied Resources. By May 1999, Texas Titan had tapped over $3,400,000 in margin debt with Plaintiff. During the week of May 24, 1999, Evans Systems stock dropped from $32 per share to $7 per share, and Industrial Data Systems stock dropped from $9 per share of $2 per share. Despite Midwest's effort to liquidate the Texas Titan account, a margin debt of nearly $2,000,000 remained unpaid.

On September 24, 2004, Plaintiff received an award for the unpaid balance against Texas Titan in NASD arbitration. As of the time of the Motion, Defendant Texas Titan has failed and refused to submit payment to Plaintiff for all amounts due, totaling $1,924,164.21 plus interest and expenses. Defendant Ballow was indicted and pled guilty to engaging in monetary transactions with criminally derived property, in violation of 18 U.S.C. § 1957. Defendant absconded and did not appear at his December 16, 2004, sentencing hearing. After the arbitration award, Plaintiff moved

4

to dismiss Defendant Texas Titan and then filed the Motion before the Court, arguing that, as the alter ego of Texas Titan, Defendant Ballow is contractually liable for debts of Texas Titan and also liable for the arbitration award against Texas Titan and that Defendant Ballow is individually liable for his own fraud perpetrated upon Plaintiff. Plaintiff seeks its actual losses, attorney's fees, costs, and punitive damages.

## II. Standard of Review and Choice of Law

Rule 56(c) Federal Rules of Civil Procedure provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fry v. Holmes Freight Lines, Inc.*, 73 F. Supp. 2d 1074 (W.D. Mo. 1999). When ruling on a motion for summary judgment, the court should view the facts in the light most favorable to the adverse party and allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *See id.* (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970)); *Reed v. ULS Corp.,* 178 F.3d 988, 990 (8th Cir. 1999)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The evidence in favor of the nonmoving party must be more than "merely colorable." *Id.* When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (footnote omitted). However, summary judgment may not be entered against a party merely because the nonmoving party does not respond to the motion. *See, e.g.*, *Soliman v. Johanns*, No. 04-2096 ___ F.3d ___, 2005 WL 1421691 at *2 (8th Cir. June 20,

2005). "Rather, before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." *Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1517 (1st Cir. 1991). (further quotations and citations omitted).

Because this action is based on this Court's diversity jurisdiction, it looks to the law of the forum state to determine which law to apply. The two agreements signed by Texas Titan each contain a choice of law clause—the Cash Agreement states that the provisions of the agreement will be construed according to Missouri law, while the Margin and Short Account Agreement provides that it will be construed in accordance with Texas law. Missouri courts enforce choice of law provisions so long as the application of a foreign state's law does not conflict with a fundamental policy of Missouri. *Block Fin. Corp. v. Am. Online, Inc.*, 148 S.W.3d 878, 884 (Mo. Ct. App. 2004). The Court shall analyze Plaintiff's claims under Missouri law, but will point out any manifest differences in Texas law where necessary.

### III. Analysis

*A. Alter Ego*

Plaintiff first argues that the corporate veil of Texas Titan should be pierced because Texas Titan and Defendant Ballow were alter egos of each other. A person may be jointly and severally liable for the debts of a corporation when the person is an alter ego of the corporation. A person will be found to be an alter ego where "'(1) [there is] such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) ... adherence to the corporate fiction [would] sanction a fraud, promote injustice, or lead to an evasion of legal obligations.'" *Minn. Laborers*

6

*Health & Welfare Fund v. Scanlan*, 360 F.3d 925, 928 (8th Cir. 2004) (quoting *NLRB v. Greater Kan. City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993)); *accord Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp.*, 885 S.W.2d 771, 773-74 (Mo. Ct. App. 1994) (stating the test as requiring a corporation to be "controlled and influenced by persons," that the evidence establishes that "the corporate cloak was used as a subterfuge to defeat public convenience, to justify a wrong, or to perpetrate a fraud" and that the wrong done be the proximate cause of injury to the complaining party).

In this case, the facts admitted to by Defendant unequivocally demonstrate that Defendant Ballow was the alter ego of Texas Titan. The facts demonstrate that Texas Titan was a shell corporation, completely under the control of Defendant Ballow. They also demonstrate that Ballow used the corporation to access margin accounts at dozens of stock brokers, to execute fraudulent transactions, to overstate assets, and to defraud brokers such as Plaintiff. Federal officials have discovered his dishonest behavior, and other courts have found alter ego liability against Ballow for these same reasons. As such, Ballow is liable for the debts of Texas Titan, including the arbitration award levied against Texas Titan in the amount of $1,927,164.21 plus interest, costs, and fees.

*B. Individual Liability for Fraudulent Inducement*

Next, Plaintiff argues that Ballow should be held individually liable for fraudulent inducement. To be successful on a claim, a plaintiff must prove: 1) a false, material representation; 2) the speaker's knowledge of its falsity or his ignorance of its truth; 3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; 4) the hearer's ignorance of the falsity of the representation; 5) the hearer's reliance on its truth; 6) the hearer's right to rely thereon; and 7) the hearer's consequent and proximately caused damages.

7

*Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848, 868 (Mo. Ct. App. 2000) (citations omitted); *see also Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (listing the elements as "[1] a material misrepresentation, [2] which was false, [3] and which was either known to be false when made or was asserted without knowledge of its truth, [4] which was intended to be acted upon, [5] which was relied upon, [6] and which caused injury." (further citations and quotations omitted)); *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) (noting that in fraudulent inducement causes of action, a plaintiff must prove the existence of a contract and the fraud must be related to the formation of that contract).

The undisputed evidence in this case demonstrates that Texas Titan, under the direct control of Ballow, stated to Plaintiff that Texas Titan had assets of $2,000,000, liquid assets of $1,000,000, and annual income of $1,000,000. This information was provided to Plaintiff on applications for accounts, including margin accounts, and would have been used to determine whether, and to what extent, Plaintiff would extend Texas Titan (and Ballow) credit. These representations were obviously false, and has been demonstrated, Ballow repeatedly and consistently made these false representations to acquire accounts at dozens of other brokers.

The evidence further demonstrates that Plaintiff, relying on these representations, did enter into the two Agreements and extend Texas Titan credit. Because Texas Titan was an undercapitalized shell corporation, Plaintiff was unable to recoup the margin deficiencies in Texas Titan's accounts. Thus, because of the material misrepresentations made by Defendant Ballow and intended to be relied upon by Plaintiff, Plaintiff entered into the Agreements with Texas Titan, relying on the statements regarding its income and assets, and was ultimately harmed when such income and assets were not present and Texas Titan (and Ballow) had accrued a substantial debt to

8

Plaintiff. Based on the undisputed facts, Plaintiff is entitled to summary judgment on the fraudulent inducement claim.

### C. Punitive Damages

Plaintiff also seeks punitive damages against Defendant Ballow. In Missouri, "[t]o make a submissible case for punitive damages, the plaintiff must present substantial evidence establishing that the defendant's conduct was outrageous because of [the] defendant's evil motive or reckless indifference to the rights of others." *Cohen v. Express Fin. Servs., Inc.* 145 S.W.3d 857, 865-66 (Mo. Ct. App. 2004) (internal citations and quotations omitted). Punitive damages are available in fraudulent inducement actions in Missouri where malicious action has been demonstrated. *See generally Central Microfilm Serv. Corp. v. Basic/Four Corp.*, 688 F.2d 1206 (8th Cir. 1982). The record demonstrates Defendant Ballow's outrageous conduct driven by his evil motive. He repeatedly and intentionally defrauded brokerages by misstating his assets and corporate structure. His manipulations of stock trades resulted in an indictment in federal court and his disappearance prior to sentencing there. Punitive damages is appropriate.

Considering all the factors necessary in setting a punitive damages award, *see Boerner v. Brown & Williamson Tobacco*, 394 F.3d 594, 602 (8th Cir. 2005), the Court finds that an award of $1,000,000 is appropriate. Although it appears that Defendant presently has little or no net worth Defendant's conduct was especially egregious, and his conduct was driven by malice. Considering the relatively high compensatory award of approximately $2,000,000, a 1:2 compensatory-to-punitive damages ratio would easily comport with due process.

### IV. Conclusion

Accordingly, it is hereby

9

Case 6:01-cv-03041-RED   Document 47   Filed 07/08/05   Page 9 of 10

ORDERED that Plaintiff Andrew Garrett, Inc.'s Motion for Summary Judgment (Doc. 44) against Defendant Harris Dempsy "Butch" Ballow is **GRANTED.** Judgment is entered in favor of Plaintiff on Counts I, II and III of Plaintiff's Complaint against Defendant Ballow in the following amounts:

| | |
|---|---|
| For compensatory damages[6] | $1,927,164.21, |
| | with 8% interest from 8/04/2004[7] |
| For arbitration costs and expenses | $12,950.00 |
| For punitive damages | $1,000,000.00 |

It is further ORDERED that Plaintiff may, within the time prescribed by rule, file a certified bill of costs for costs related to this litigation, and a motion for attorneys' fees with attached affidavits and documentation demonstrating the reasonableness of said fees.

**IT IS SO ORDERED.**

DATE:  July 8, 2005  　　　　　　　　  /s/ Richard E. Dorr
　　　　　　　　　　　　　　　　　　　RICHARD E. DORR, JUDGE
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT

---

[6]　　Including joint and several liability as alter ego for Texas Titan, breach of contract, and fraudulent inducement.

[7]　　The date of the arbitration award.

10